**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **Herbert Randall Wright III p/k/a G Herbo,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Machine Entertainment Group LLC and Joseph Bowden,**<br><br>**Defendants.** | ) | Civil Action No.: |

## COMPLAINT

Plaintiff Herbert Randall Wright III p/k/a G Herbo ("Wright"), by and through his undersigned counsel, for his Complaint against Defendants Machine Entertainment Group LLC ("Machine") and Joseph Bowden ("Bowden," and collectively "Defendants"), alleges based on information and belief as to others and upon knowledge to himself as follows:

## The Parties

1. Plaintiff Wright is a musical performer, recording artist, and songwriter in the rap/hip-hop genre, professionally known as "G Herbo."

2. Defendant Machine is an Illinois limited liability company with its principal place of business in Illinois.

3. Defendant Bowden is a domiciliary of the State of Illinois. Bowden is the manager and owner of Machine. Bowden is responsible for the operation of, and dominates and controls the business affairs of, Machine.

**Jurisdiction and Venue**

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) for the claims in the Complaint which arise under the copyright laws of the United States, Title XVII of the United States Code. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for all other claims in the Complaint, because they are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over Defendants and venue is proper in this Court because the Release Agreement (defined below) between Wright and Defendants makes the U.S. District Court, Northern District of Georgia in Atlanta, Georgia the exclusive venue and jurisdiction for resolving any disputes or disagreements between the parties relating to the Release Agreement.

## Statement of Factual Allegations

**A. Preliminary Statement**

6. Wright is an enormously successful musician in the hip-hop/rap genre performing professionally under the name "G Herbo." Wright began his musical career in Chicago, Illinois, before he turned the majority age of eighteen.

7. Bowden is a sophisticated businessman in the music industry who owns and controls Machine. Bowden sometimes uses the professional name "JB."

8. Beginning when Wright was a minor, Defendants took advantage of Wright's lack of knowledge regarding the music business to deprive him of millions of dollars of income, as well as his enormously valuable intellectual property and other rights.

9. Specifically, Bowden's company Machine entered into unfair and one-sided deals with Wright to obtain his copyrights and other valuable rights. At the same time, Bowden served as Wright's business manager. A business manager is a fiduciary who is responsible for protecting his or her client's financial interests.

10. Bowden ensured that Wright would have no access to the millions of dollars that Wright had rightfully earned, and instead that Wright would be dependent upon Bowden to make even basic purchases for him. Through this scheme, Bowden planned to keep Wright forever indebted to Defendants, and

unable to terminate the contracts which gave Wright's valuable copyrights and other rights to Defendants.

11. Additionally, a business manager is required to ensure that his or her client is treated fairly by their record label. Here, Bowden was conflicted from fulfilling these requirements because Bowden owns Wright's record label. Moreover, Bowden did not even attempt to deal fairly with Wright, but instead took financial advantage of him in every manner imaginable.

12. Bowden entered into and proceeded to abuse his fiduciary relationship with Wright. Bowden violated his position of trust and confidence with Wright by entering into self-interested transactions to the detriment of Wright, without providing Wright with full and proper disclosure.

13. Wright and Defendants entered into a mutual release agreement during a meeting at a recording studio on August 25, 2023 (the "Release Agreement"). This Release Agreement rendered earlier agreements between the parties null and void *ab initio*, and it returned to Wright the copyrights and other rights which Wright had previously conveyed to Defendants.

14. Soon after signing the Release Agreement, however, Defendants hatched a scheme to try to get out of the Release Agreement. They concocted an outrageously false and baseless story that: (a) Bowden purportedly was threatened with guns and other violence in order to have him sign the Release Agreement; and

(b) Bowden purportedly was physically prevented from leaving the recording studio until he signed the Release Agreement. Defendants defamed Wright by publishing these false accusations to at least one influential individual in the music industry. Bowden also threatened to run to the criminal authorities with these false claims unless Wright agreed to disavow the Release Agreement.

15. Wright, however, will not give into these wrongful tactics. Wright now seeks, through the claims in this Complaint, to enforce the Release Agreement, to reclaim his intellectual property, to protect his copyrights from infringement by Defendants, and to obtain compensation for the self-dealing transactions entered into by his fiduciary.

**B. Defendants Convinced Wright to Enter into an Exclusive Recording Agreement, in Exchange for a Paltry Advance of $15,000**

16. Defendants first convinced Wright to sign an exclusive recording agreement with Machine when Wright was a minor (the “Minor Agreement”). Defendants, however, were concerned that the Minor Agreement could be found by a court to be invalid on the basis that Wright was under eighteen when he signed it. Therefore, shortly after Wright turned eighteen Defendants successfully compelled Wright to sign a new exclusive recording agreement with Machine, which was dated October 17, 2013 (hereafter, the “Recording Agreement”).

17. The Recording Agreement conveyed to Machine, among other valuable rights, the exclusive copyrights in Wright's musical recordings during the term thereof. Shockingly, the only up-front payment which Wright received in exchange for the granting of these valuable rights was a paltry payment of Fifteen Thousand Dollars ($15,000), which payment would be recoupable (*i.e.*, repaid from future monies otherwise payable to Wright under the Recording Agreement).

18. The Recording Agreement provided for a term of four (4) albums.

19. The Recording Agreement provided that Machine would license Wright's musical recordings to a third-party distributor (the "Distributor"), which would, in turn, pay royalties to Machine.

20. Section 4 of the Recording Agreement further obligated Machine to pay certain specified royalties to Wright in connection with exploitations of his musical recordings.

21. Section 6 of the Recording Agreement granted Machine the exclusive right to use Wright's name and likeness in connection with the sale, leasing, or other disposition of any merchandising in connection with Wright's musical recordings and albums that were the subject of the Recording Agreement ("Merchandising Rights"). Machine agreed in the Recording Agreement to pay Wright a 60% royalty of Machine's net royalty receipts derived from its uses of these Merchandising Rights.

22. Section 8 of the Recording Agreement required Machine to account to Wright for the royalties which it owed him on a semi-annual basis, and "within sixty (60) days of [Machine's] receipt of [royalty] statements from Distributor."

23. In flagrant breach of the Recording Agreement, Machine never complied with its contractual payment and accounting obligations to Wright. Indeed, it was only within the past few weeks that Defendants for the very first time provided any sort of financial reporting whatsoever to Wright. Defendants' belated report baldly asserts, in conclusory terms, that Wright purportedly owes Machine a recoupable balance in the amount of $8.4 million. Wright vigorously disputes the accuracy of this report.

**C. In a Flagrant Conflict of Interest, Bowden Assumed the Fiduciary Role of Wright's Business Manager to Enrich Himself at Bowden's Expense and Keep Wright Trapped in the Recording Agreement**

24. In addition to controlling the copyrights and other valuable rights in Wright's entertainment career through the Recording Agreement, Bowden also assumed the separate role of Wright's business manager for the vast majority of the past ten (10) years.

25. In the music industry, the role of a business manager is to manage the financial affairs of a recording artist, and to advise the recording artist regarding same. A business manager, among other things, is responsible for collecting

revenues, investing funds, managing accounts, and paying debts. For these reasons, as his business manager, Bowden owed fiduciary duties to Wright.

26. Because a business manager is a fiduciary, a business manager should have no higher loyalty than to the artist whom he or she represents. Accordingly, Wright had trust and confidence that Bowden would act in a manner that was in Wright's best interest and to refrain from any activities which enriched him to the detriment of Wright.

27. The role of a business manager is also to serve as a separate, independent "check" on the behavior of the record label. A business manager helps ensure that the record label renders complete and correct accountings and payments to the recording artist, and that the affairs of the recording artist are otherwise being handled properly by that record label. A business manager also provides advice to his or her client regarding the financial implications of proposed recording agreements and amendments thereto.

28. It was a grievous conflict of interest for Bowden to serve as Wright's business manager while at the same time Bowden, through Machine, controlled Wright's recording rights and other rights. At all relevant times, Bowden understood the nature of this conflict of interest but never explained it to Wright.

29. Bowden abused his role as business manager to enrich himself personally at Wright's expense, and to keep Wright trapped in the Recording Agreement indefinitely.

30. Bowden ensured that Wright was not paid the royalties that he was owed under the Recording Agreement. Instead, Bowden intentionally left Wright in dire financial straits, for the specific purpose of making Wright financially dependent upon Bowden. Because Wright's money was controlled by Defendants, Wright was forced to ask Bowden to make purchases on his behalf, including for vehicles, Wright's rent, and his mother's rent. Bowden's conduct, in depriving Wright of his own funds, was designed to prevent Wright from leaving Machine, or from being able to successfully work with another business manager who would actually look out for Wright's best interests.

31. Although Bowden often would proceed to make the requested purchases for Wright, Bowden wrongfully would characterize these purchases as "advances" that purportedly were made by Machine on behalf of Bowden, so that they would be "recouped" (*i.e.*, repaid) out of royalties which were otherwise payable by Machine to Bowden. These self-dealing transactions were a grievous breach of Bowden's fiduciary duties to Wright.

32. Bowden further breached his fiduciary duties to Wright by failing to account to Wright for: (a) the commissions and/or other funds which Bowden paid

himself from Wright's monies; (b) the funds which were paid into Wright's bank account; (c) the funds which were paid out of Wright's bank account; (d) the purchases that Bowden made for Wright; or (e) the "advances" purportedly paid by Machine.

### D. Defendants Wrongfully Pressured Wright to Amend the Recording Agreement to Make It Even More Unfairly Favorable to Defendants

33. Sometime after the entry of the Recording Agreement, Machine and Wright entered into a first amendment to the Recording Agreement (the "First Amendment"). In the First Amendment, the parties acknowledged, among other things, that the Minor Agreement was superseded by the Recording Agreement, and therefore, the Minor Agreement was invalid. The First Amendment also reduced the term of the Recording Agreement from four albums to three albums.

34. In the Fall of 2017, Bowden pressured Wright to sign a second amendment to the Recording Agreement (the "Second Amendment"). The Second Amendment made the terms of the Recording Agreement far worse for Wright. For example, the Second Amendment extended the term of the recording agreement to five albums (instead of three albums). The Second Amendment also included a provision stating that so-called "mixtapes" featuring Wright would not qualify as albums for purposes of fulfilling the five-album term of the Second

Amendment to the Recording Agreement.[1] The Second Amendment further provided that "[t]he parties will agree on all mixtape releases …." In other words, the Second Amendment provided that Machine and Wright would agree on which releases constituted qualifying albums, and which releases constituted mixtapes.

35. Bowden convinced Wright to meet him at a Chase bank branch to execute the Second Amendment. Given that Bowden had been wrongfully withholding Wright's funds, Bowden knew that Wright was in dire financial straits, and therefore Bowden enticed Wright with a "wad of cash" to pressure him to sign the Second Amendment. Bowden's tactic was successful, and Wright took the money and signed the Second Amendment.

36. Effective August 23, 2021, Wright and Machine signed a Third Amendment to the Recording Agreement. The Third Amendment reduced the term of the Recording Agreement to four albums—again, not including "mixtapes."

---

[1] Historically, in hip-hop music, a mixtape was "a self-produced or independently released album issued free of charge …." However, with respect to certain contemporary hip-hop music, including Wright's music, there is no real distinction between an album and a mixtape. Indeed, "the term [mixtape] has been applied to a number of releases published for profit in the 2010s; in this context, a mixtape is comparable to a studio album …." *See* https://ultimatepopculture.fandom.com/wiki/Mixtape.

### E. Defendants Made Enormous Windfall Profits from Wright, by Depriving Him of All His Funds

37. Since the entry of the Recording Agreement, Wright has delivered an enormous number of musical recordings to Machine for release. According to Wikipedia, "G Herbo has released five studio albums (including one collaborative album), six mixtapes, [and] two extended plays …."

38. Defendants have profited handsomely from Wright's prolific releases. Bowden has bragged that he already has earned more than $20 million from Wright. Defendants, however, have unlawfully extracted their profits from Wright, who has been deprived of the funds he rightfully has earned.

39. Defendants have made clear that they intend to keep Wright bound to the Recording Agreement in perpetuity by refusing in bad faith to agree that any of Wright's releases subsequent to 2017 constitute "albums" instead of "mixtapes." Specifically, Defendants have taken the wrongful, bad-faith position that the only one of Wright's voluminous releases which constitutes an "album" is his first album *Humble Beast* (2017), and that every subsequent release by Wright over the past six years is purportedly a "mixtape." Defendants' conduct in this regard constitutes a quintessential breach of the implied contractual duty of good faith and fair dealing.

### F. The Parties Freely and Voluntarily Entered into a Valid, Binding and Enforceable Mutual Release Agreement

40. Wright concluded that Defendants' parasitic relationship with him was untenable, and thus he sought to extricate himself from Defendants' web on an amicable basis and without the need for litigation.

41. On or about the evening of August 25, 2023, Wright attended a meeting with Bowden at a recording studio in Los Angeles, California. Also present at the studio that night Bowden's brother, Ogbonna "OB" Bowden, three business associates of Wright, and the owner of the recording studio.

42. At the meeting, Wright and Defendants discussed, among other matters, a proposed settlement and mutual release that would end the business relationship between Wright and Defendants, and release all claims between them.

43. At the recording studio, Wright and Defendants freely and voluntarily entered into a contract called Release and Confidential Settlement Agreement (the "Release Agreement").

44. The Release Agreement contains mutual general releases between Wright, on one hand, and Defendants, on the other hand.

45. The Release Agreement also explicitly rendered the Recording Agreement (and its amendments) moot and completely unenforceable. Specifically, the Release Agreement states: "The term of the Recording Agreement is hereby terminated, and the Recording Agreement itself is deemed to be null and

void *ab initio*. Accordingly, as of the date of this Agreement, no Party shall have any rights or obligations regarding the other arising under the Recording Agreement, any such rights solely arising under this Agreement." The Release Agreement, therefore, terminated all alleged rights that Machine and/or Bowden may have had to Wright's musical recordings, endorsement services, or any other services or intellectual property of Wright.

46. The Release Agreement further provides: "in the event of any legal action to enforce or otherwise arising out of or in connection with this Agreement, the prevailing Party(ies) shall be entitled to be awarded its/their attendant costs and reasonable attorneys' fees from the other Party(ies), including such attorneys' fees and costs on appeal."

### G. Defendants Attempted to Extort Wright into Repudiating the Release Agreement through False Accusations of Duress, and Defamed Wright with These Same False Accusations

47. At some point after entering into the Release Agreement, Bowden decided that he regretted signing it. Accordingly, Bowden concocted a false and utterly bogus story that he purportedly had signed the Release Agreement under duress.

48. Specifically, Bowden falsely claimed to representatives of Wright that: (a) he purportedly was threatened with guns and other violence into signing

the Release Agreement; and (b) he purportedly was prevented physically from leaving the recording studio until he signed the Release Agreement.

49. These claims are outright lies. There were no guns brandished at the studio meeting, nor were there any threats of violence. Moreover, Bowden was not prevented from leaving the studio. In fact, Bowden initially left the studio without having signed the Release Agreement. He then **returned** to the studio to sign the Release Agreement, after apparently having given the matter more thought.

50. Outrageously, Defendants have attempted to extort Wright into repudiating the Release Agreement. Specifically, Defendants have threatened to publicly disclose their utterly false accusations of duress, threats, violence and unlawful restraint to the authorities, unless Wright repudiates the Release Agreement.

51. Even more outrageously, Defendants have threatened to disclose these false accusations and thereby cause harm to Wright in an unrelated criminal proceeding involving Wright—unless Wright repudiates the Release Agreement. As Defendants' attorney brazenly stated in a letter to Wright's counsel dated October 18, 2023: if Bowden were to "file a police report," it "could be devastating to Mr. Wright's pending criminal action." (Hereafter, this letter is referred to as the "Extortion Demand Letter.")

52. Defendants also have further pressured Wright into repudiating the Release Agreement by defaming him. Specifically, just last week, Defendants sent a copy of the Extortion Demand Letter—which contains false accusations against Wright of duress, threats, violence, and unlawful restraint—to a third-party attorney who does not represent Wright (the "Third Party Attorney"). The Third Party Attorney lawyer is a partner at the prestigious entertainment law firm of Rothenberg, Mohr & Binder, LLP ("RMB"). Defendants are fully aware that RMB does not represent Wright, and thus Defendants transmitted this letter to RMB solely for purposes of defaming Wright. Wright believes that Defendants also published their defamatory accusations to other third parties, the identities of whom are presently unknown to him.

**H. Defendants Refuse to Acknowledge the Validity of the Release Agreement**

53. After entering the Release Agreement, Defendants continue to exploit Wright's recordings and continue receiving royalties and payments from Wright's works to which they have no entitlement.

54. In a letter dated September 29, 2023, Wright's counsel informed Defendants that, following the entry of the Release Agreement, they have no right to engage in the conduct described in the preceding paragraph. In the September 29, 2023, letter, Wright's counsel instructed Machine and Bowden to provide written notice to all distributors of Wright's recordings that: (a) Machine no longer

has any rights to them, and (b) these distributors should now issue all royalty accountings and payments directly to Wright or his representatives.

55. By letter dated October 23, 2023, Defendants' counsel stated that the Release Agreement is purportedly invalid based upon their false and utterly baseless accusations of purported duress, threats, violence and unlawful restraint. Their letter further made clear that Defendants will continue to exploit Wright's recordings and continue collecting royalties and payments from Wright's works, notwithstanding the terms of the Release Agreement.

**COUNT I: DECLARATORY JUDGMENT pursuant to 28 U.S.C. § 2201**
**(*Against Machine and Bowden*)**

56. Wright repeats and realleges the allegations set forth in Paragraphs 1 through 55, as if they were fully set forth herein.

57. Machine and Bowden assert that the Release Agreement is unenforceable.

58. Machine and Bowden are treating previous agreements entered between the parties, including the Recording Agreement, as remaining in effect.

59. Wright disputes the assertions and actions of Machine and Bowden in the two preceding paragraphs; Wright asserts that the Release Agreement is valid, binding and enforceable. Wright further asserts that, as a result of the Release Agreement, all previous agreements entered between the parties are null and void *ab initio*.

60. Accordingly, an actual case and controversy exists between the parties, and a declaratory judgment is necessary to clarify and resolve their dispute.

61. Wright seeks a declaratory judgment from this Court under 28 U.S.C. § 2201 establishing the following:

a. The Release Agreement is valid, binding and enforceable;

b. Based on the Release Agreement, the Recording Agreement is null and void *ab initio,* and of no force and effect;

c. Based on the Release Agreement, Bowden and Machine have no right to publish, distribute, reproduce, or otherwise profit from Wright's recordings;

d. Based on the Release Agreement, Wright is the 100% copyright owner of his recordings;

e. Bowden and Machine must disgorge to Wright all gross proceeds they have earned, subsequent to the date of the Release Agreement, under the terms of contracts between Defendants and Bowden that they entered into before the Release.

**COUNT II: COPYRIGHT INFRINGEMENT (*Against Machine and Bowden*)**

62. Wright repeats and realleges the allegations set forth in Paragraphs 1 through 55 as if they were fully set forth herein.

63. As a result of the execution of the Release Agreement, Wright is the exclusive copyright owner of his musical recordings. Accordingly, Defendants have no right to exploit the exclusive rights in those musical recordings.

64. In 2014, Wright created an album of recorded music entitled "Welcome to Fazoland."

65. "Welcome to Fazoland" is an original work.

66. Wright registered "Welcome to Fazoland" with the Register of Copyrights on October 18, 2023, and received registration number SR 976-035 under 37 C.F.R. § 202.4(k) for a group of works published on the same album. Exhibit 1 to this Complaint is a true and correct copy of the copyright registration information for "Welcome to Fazoland" from the Website of the United States Copyright Office.

67. Following entry of the Release Agreement, Wright, through his counsel, instructed Machine and Bowden to cease and desist from all reproduction, distribution, and profit from his musical recordings.

68. Nevertheless, Machine and Bowden continue to reproduce and distribute Wright's musical recordings, including, but not limited to, those on "Welcome to Fazoland." Machine and Bowden continue, wrongfully, to collect royalty accountings and payments from them.

69. As a result of Machine's and Bowden's infringement of Wright's copyright in "Welcome to Fazoland," Wright is entitled to damages pursuant to 17 U.S.C. § 504 and injunctive relief pursuant to 17 U.S.C. § 502.

**COUNT III: EQUITABLE ACCOUNTING (*Against Machine and Bowden*)**

70. Wright repeats and realleges the allegations set forth in Paragraphs 1 through 55, as if they were fully set forth herein.

71. Machine and Bowden should account to Wright for all revenues they collected as Wright's business manager (*i.e.*, as his fiduciary) and/or under a purported claim of right under the Recording Agreement.

72. Wright is without an adequate remedy at law.

73. In the event the Release Agreement is held to be enforceable, Defendants should be ordered to provide an accounting of all monies collected they and/or spent as Wright's business manager and/or under a purported claim of right under the Recording Agreements (and/or other earlier agreements between Defendants and Wright) after the Release Agreement was entered.

74. In the event the Release Agreement is held to be unenforceable, Defendants should be ordered to provide an accounting of all monies collected they and/or spent as Wright's business manager and/or under a purported claim of right under the Recording Agreements (and/or other earlier agreements between the parties) since the inception of the relationship between Defendants and Wright.

75. In all events, an equitable accounting is warranted because the accounts at issue are unusually complicated.

**COUNT IV: DEFAMATION (*Against Machine and Bowden*)**

76. Wright repeats and realleges the allegations set forth in Paragraph 1 through 55, as if they were fully set forth herein.

77. By sending the Extortion Demand Letter to the Third-Party Attorney, Defendants defamed Wright.

78. The Extortion Demand Letter contains knowingly false accusations concerning Wright.

79. The Extortion Demand Letter is defamatory *per se* because it makes false accusations that Wright purportedly engaged in criminal conduct, and because these false allegations pertain to Wright's profession.

80. Defendants' publication of the Extortion Demand Letter to the Third Party Attorney was not privileged.

81. As a result of Defendants' defamatory conduct, Wright has suffered damages in an amount to be determined at trial.

**COUNT V: BREACH OF FIDUCIARY DUTY**
**(*Against Machine and Bowden*)**

82. Wright repeats and realleges the allegations set forth in Paragraphs 1 through 55, as if they were fully set forth herein.

83. Wright only seeks to recover on Count V if the Court ultimately disagrees with Wright as to the validity of the Release, and finds that the Release Agreement is unenforceable. Accordingly, Count V is asserted solely as a precautionary matter, and in the alternative.

84. Bowden owed, and owes, stringent fiduciary duties to Wright, including, but not limited to, the fiduciary duties of disclosure and loyalty.

85. Bowden breached his fiduciary duties through numerous actions, which include, but are not limited to, the following:

- Failing to inform Wright that Bowden had an inherent conflict of interest and was unable to fulfill his fiduciary duties to Wright, including because he indirectly owned and controlled Wright's sound recordings and certain musical publishing rights through his company Machine;
- Engaging in self-dealing transactions;
- Failing to account for funds received, on behalf of, and owed to Wright; and
- Enriching himself at the expense of Wright.

86. Wright has suffered damages as a result of the above-referenced actions in an amount to be determined at trial but no less than $20,000,000.00.

87. As a result of Bowden's breaches of his fiduciary duties to Wright, Wright is also entitled to rescission of the Recording Agreement and to disgorge all royalty accountings, payments, and other profits earned by Bowden (both individually and through Machine) from Wright and his activities under the Recording Agreement and otherwise.

88. There is no requirement that Wright tender any sums received under the Recording Agreement because Machine holds funds of a greater amount that are owing to Wright.

**COUNT VI: BREACH OF THE RECORDING AGREEMENT**
**(*Against Machine*)**

89. Wright repeats and realleges the allegations set forth in Paragraphs 1 through 55, as if they were fully set forth herein.

90. Wright only seeks to recover on Count VI if the Court ultimately disagrees with Wright as to the validity of the Release Agreement, and finds that the Release Agreement is unenforceable. Accordingly, Count VI is asserted solely as a precautionary matter, and in the alternative.

91. Wright has performed all his obligations under the Recording Agreement and/or is excused from doing so.

92. Machine materially breached the Recording Agreement by failing to account to Wright for all royalties due and owing to him thereunder.

93. Machine materially breached the Recording Agreement by failing to pay Wright all royalties due and owing to him thereunder.

94. As a result of Machine's material breaches, Wright has been damaged in an amount to be determined at trial, but no less than $20,000,000.

95. Additionally, Wright is entitled to an Order declaring that the Recording Agreement has been terminated as a result of Machine's material breaches thereof, and/or on the basis that Wright has delivered to Machine the total number of albums that are required thereunder.

**COUNT VII: PUNITIVE DAMAGES (*Against Machine and Bowden*)**

96. Wright repeats and realleges the allegations set forth in Paragraph 1 through 55, as if they were fully set forth herein.

97. Wright is entitled to recover punitive damages from Machine and Bowden because their conduct as alleged above was willful, wanton, and evidences that entire want of care as would raise a presumption of conscious indifference to consequences.

98. Wright is also entitled to recover unlimited punitive damages from Machine and Bowden under O.C.G.A. § 51-12-5.1(f) because the conduct of these parties as alleged above evidences specific intent to cause harm to Wright.

## **Prayer for Relief**

WHEREFORE, Wright prays for judgment against Defendants, and each of them, as follows:

1. On Count I for Declaratory Judgment, a judgment that: (a) the Release is valid, binding and enforceable; (b) based on the Release Agreement, the Recording Agreement is null and void *ab initio* and of no force and effect; (c) based on the Release, Bowden and Machine have no right to publish, distribute, reproduce, or otherwise profit from Wright's recordings; (d) based on the Release Agreement, Wright is the 100% copyright owner of his recordings; and (e) Bowden and Machine must disgorge to Wright all gross proceeds they have earned, subsequent to the date of the Release Agreement, under the terms of contracts between the parties that they entered into before the Release.

2. On Count II for Copyright Infringement, that (a) Defendants and their officers, agents, servants, employees, affiliated entities, and all of those in active concert with them be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. § 501; (b) Defendants be required to pay Plaintiff actual damages and Defendants' profits attributable to

infringement, or, at Plaintiff's election, maximum statutory damages for intentional infringement as provided in 17 U.S.C. § 504; and (c) Defendants be required to account for all profits, income, receipts, or other benefits derived by Defendants as a result of their unlawful conduct.

3. On Count III for Equitable Accounting, an equitable accounting of all revenues collected by Machine and Bowden under the Recording Agreement and, after August 25, 2023, under a purported claim of right under the Recording Agreement.

4. On Count IV for Defamation, damages in an amount to be determined at trial.

5. On Count V for Breach of Fiduciary Duty, damages in an amount to be determined at trial but no less than $20,000,000, in addition to rescission of the Recording Agreement and disgorgement of all profits received under the same.

6. On Count VI for Breach of the Recording Agreement, damages in an amount to be determined at trial but no less than $20,000,000, as well as an Order declaring that the Recording Agreement has been terminated on the basis of Machine's incurable breaches thereof

and/or on the basis that Wright has delivered to Machine the total number of albums that are required thereunder.

7. On Count VII for Punitive Damages, damages in an amount to be determined at trial.

8. On all counts, an award of attorney's fees and full costs as provided in the Release Agreement and as permitted by law, equity, and/or statute.

9. On all counts, an award of pre-judgment and post-judgment interests as permitted by law, equity and/or statute.

10. Such other and further relief as the Court may deem just and proper.

**Demand for Trial By Jury**

Wright demands a trial by jury of all claims so triable.

Respectfully submitted this 25th day of October, 2023

Law Offices of Marguerite E. Patrick, LLC

/s/ Marguerite E. Patrick

Marguerite E. Patrick
Ga Bar No. 566187
2161 Virginia Place
Atlanta, GA 30305
(404)401-8017 (Phone)
E-mail: mebpatrick@icloud.com

-and-

CHAUDHRYLAW PLLC

Jeffrey M. Movit
NY Bar No.
4239778
(*Pro Hac Vice* Application
Forthcoming)
147 West 25th Street
12th Floor
New York, NY 10001
(212)518-3215
jeff@chaudhrylaw.com

*Attorneys for Plaintiff.*